Filed 4/22/26  P. v. Financial Casualty & Surety CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FINANCIAL CASUALTY & SURETY, INC.,<br><br>    Defendant and Appellant. | G065222<br><br>(Super. Ct. No. 22WF0665)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Justin Glenn-Leistikow, Judge. Affirmed.

John Mark Rorabaugh, for Defendant and Appellant.

Leon J. Page, County Counsel, and Golnaz Zandieh, Deputy County Counsel, for Plaintiff and Respondent.

\*          \*          \*

Defendant Financial Casualty & Surety, Inc. (Financial Casualty) issued a $100,0000 bail bond to secure Danny Ortizburgos release from jail after he violated the terms of his probation. Ortizburgos then missed a court appearance. The trial court ordered the bail bond to be forfeited, and it later entered summary judgment against Financial Casualty and in favor of plaintiff the People of the State of California (the County). On appeal, Financial Casualty contends the court erred by entering summary judgment against it because the bail bond had been exonerated by operation of law. We disagree and affirm the judgment.

FACTS AND PROCEDURAL HISTORY

I.

CHARGES AND SENTENCING

In March 2022, the Orange County District Attorney (the prosecution) filed three felony charges against Ortizburgos for assault with a firearm (Pen. Code § 245, subd. (a)(2); count one)[1], assault with a machinegun (§ 245, subd. (a)(3); count two), and criminal threats (§ 422, subd. (a); count three.) The trial court later granted the prosecution's motion to reduce counts one and three to misdemeanors, and Ortizburgos pleaded guilty to all three counts.

Ortizburgos was sentenced in May 2022. The trial court stayed the sentence on count three under section 654. As to counts one and two, the court suspended imposition of the sentence and placed Ortizburgos on three years' probation with a condition that he serve 180 days in jail. Ortizburgos agreed to various probation terms, including that he would (1) not use any

---

[1] All undesignated statutory references are to the Penal Code.

unauthorized drugs, (2) not violate any law, and (3) attend and complete a domestic violence batterers' treatment program, among other conditions.

## II.

### BAIL BOND ISSUED

A few months later, on September 2, 2022, a probation officer filed a Petition for Arraignment on Probation Violation (the first petition), which claimed that Ortizburgos had violated his probation terms. Specifically, the day before the first petition's filing, Ortizburgos had been arrested for allegedly (1) violating a protective order (§ 273.6, subd. (a)), (2) unlawfully possessing a controlled substance (Health & Saf. Code, § 11377, subd. (b)), and (3) falsely representing his identity to a peace officer (§ 148.9, subd. (a).)

A probation violation arraignment was held the same day. At the hearing, Ortizburgos was remanded to the custody of the sheriff, and the trial court ordered no bail. The court set another hearing on the alleged probation violation, which, after a continuance, was held on October 3, 2022.

At the October 3 hearing, the trial court revoked Ortizburgos' probation. It then trailed the hearing to a later date. (See § 1203.2, subd. (a).)[2] The hearing resumed on October 13. The court set bail at $100,000, and continued the hearing to October 20, 2022. It ordered Ortizburgos to appear on that date.

---

[2] "Upon [a probationer's] rearrest, or upon the issuance of a warrant for rearrest, the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of their supervision, or has subsequently committed other offenses, regardless of whether the person has been prosecuted for those offenses." (§ 1203.2, subd. (a).)

3

On October 20, Financial Casualty posted a $100,000 bail bond (the bail bond) to secure Ortizburgos' release from custody. Per the terms of the bail bond, Financial Casualty agreed to "undertake[] that [Ortizburgos] will appear in [the Orange County Superior Court] on [October 20, 2022] to answer any charge in any accusatory pleading based upon the acts supporting the complaint filed against him/her and as duly authorized amendments thereof, in whatever court may be filed and prosecuted, and will at all times hold him/herself amenable to the orders and process of the court, and if convicted, will appear for pronouncement of judgment or grant of probation, or if he/she fails to perform either of these conditions, that [Financial Casualty] will pay to the people of the State of California the sum [$100,000] subject to applicable legal provisions."

Ortizburgos appeared on October 20, but the arraignment hearing was continued several more times. It eventually occurred on December 12, 2022, and Ortizburgos denied the probation violation. The trial court later set a disposition hearing on the probation violation for March 23, 2023 (the disposition hearing), and ordered Ortizburgos to return to court on that date.

Prior to the disposition hearing, however, a probation officer filed another Petition for Arraignment on Probation Violation on February 22, 2023 (the second petition). The second petition alleged that Ortizburgos had violated the terms of his probation by failing to complete a domestic violence treatment program.

On March 7, 2023, the trial court issued an arrest warrant for Ortizburgos (the warrant). The court's minutes from March 7, state that "Probation was REVOKED on 10/03/2022."

4

## III.

### BAIL BOND FORFEITURE

Ortizburgos did not appear at the hearing on March 23, 2023.[3] The trial court ordered the bail bond forfeited, and it gave Financial Casualty notice of the forfeiture the next day (see § 1305, subd. (b)(1)).

Financial Casualty filed and withdrew two different motions to vacate forfeiture and exonerate the bail bond before the trial court denied its third such motion (the third motion). The day after the third motion was denied, the court entered summary judgment in the amount of $100,000 against Financial Casualty. (See § 1306, subd. (a).)

On appeal, Financial Casualty contends the trial court erred by denying the third motion and entering summary judgment. It claims the bail bond was exonerated by operation of law because (1) Ortizburgos was returned to probation after the bail bond was issued, and (2) the County failed to notify it of the second petition and the warrant, which materially increased its risk. We are not persuaded by either argument.

### DISCUSSION

### I.

### BACKGROUND LAW

"While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the prosecutions and are civil in nature. [Citation.] 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.'" (*People v. American Contractors Indemnity Co.* (2004)

---

[3] The record indicates that Ortizburgos was located in Guatemala in April 2024. The prosecution declined to seek extradition because it believed the relevant extradition treaty did not cover probation violations.

33 Cal.4th 653, 657.) "[T]he 'bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.'" (*Id.* at pp. 657–658.)

"When a person for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare a forfeiture of the bond. [Citation.] The 185 days after the date the clerk of the court mails a notice of forfeiture . . . to the appropriate parties is known as the appearance period. [Citation.] During this time, the surety on the bond is entitled to move to have the forfeiture vacated and the bond exonerated on certain grounds . . . . [¶] After the appearance period expires, the trial court has 90 days to enter summary judgment on the bond. [Citation.] If summary judgment is not entered within the statutory 90–day period, the bond is exonerated." (*People v. American Contractors Indemnity Co*, *supra*, 33 Cal.4th at p. 658, fns. omitted.)

"Ordinarily, appellate courts review an order denying a motion to vacate the forfeiture of a bail bond under an abuse of discretion standard. [Citation.] When the appellate court is deciding only legal issues, however, . . . the abuse of discretion standard does not apply. [Citation.] When the facts are undisputed and only legal issues are involved, appellate courts conduct an independent review." (*People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 592.) Though our review is de novo, we presume the trial court's judgment is correct and Financial Casualty has the burden of showing error. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.)

RETURN TO PROBATION

*A. Waiver*

The County claims that Financial Casualty has waived this argument by failing to raise it in the trial court. But even if it was not raised below, this argument concerns the court's fundamental jurisdiction and could be raised at any time.[4]

"Where the bond does not exist because it was exonerated, the court lacks fundamental jurisdiction, and any summary judgment purportedly entered on that bond is void. [Citation.] When the summary judgment entered on a bail bond is void, that judgment is subject to attack at any time." (*People v. International Fidelity Ins. Co.*, *supra*, 204 Cal.App.4th at pp. 595–596; *People v. Safety National Casualty Corp.* (2007) 150 Cal.App.4th 11, 17 (*Safety National*) ["[E]ntry of summary judgment based on a void forfeiture order is a jurisdictional defect that may be raised for the first time on appeal"].)

*B. Merits*

"If the defendant, who is on bail, does appear for judgment and judgment is pronounced upon him or probation is granted to him, then the bail shall be exonerated . . . ." (§ 1195.) This statute "is self-executing, and a surety's obligations under the bond are extinguished upon pronouncement of sentence." (*Safety National*, *supra*, 150 Cal.App.4th at p. 14.)

The above rule also applies if a defendant is returned to probation following a probation violation. (*Safety National, supra,* 150

---

[4] The third motion is not included in the record. The record only contains the notice of the third motion, which fails to state the specific grounds on which it was brought.

Cal.App.4th at pp. 16–17.) "If bond were still in effect after a probation order was made which did not impose incarceration as a term thereof, a surrender of the defendant to the jailer by the bondsmen would be an idle act; because the jailer would then have no authority to imprison the defendant, she being free by the terms of the probation order." (*People v. Doe* (1959) 172 Cal.App.2d Supp. 812, 817.)

For example, in *Safety National*, the defendant's probation terms required her to complete a volunteer program and provide proof of completion. The defendant missed a court appearance, a warrant was issued, and she was arrested. The surety posted a $35,000 bond to secure her release from custody, and the defendant was ordered to appear on July 5, 2005. She did not appear, so the court declared bail forfeited and issued another warrant. But the defendant appeared on July 12, so the court withdrew the warrant, set aside the forfeiture, and reinstated bail. It also continued the matter until July 19, to allow the defendant to show proof of enrollment in a volunteer program. When the defendant failed to appear on July 19, the court declared bail forfeited and issued another warrant. (*Safety National*, *supra*, 150 Cal.App.4th at p. 13.) Summary judgment was later entered against the surety. (*Id*. at p. 14.)

The appellate court reversed summary judgment. It explained that "[a]lthough [the defendant] did not appear on July 5, she did appear on July 12. At the July 12 hearing, the court continued [the defendant] on probation when it ordered her to appear on July 19 to provide proof of enrollment in the volunteer program. By returning [the defendant] to probation, the bail was exonerated by operation of law. Consequently, the trial court's order reinstating bail and its pronouncement of forfeiture of bail when [the defendant] failed to appear at the next scheduled hearing were

8

void acts, as there was no obligation in existence that could be reinstated or forfeited." (*Safety National, supra,* 150 Cal.App.4th at pp. 16–17.)

Analogizing to *Safety National,* Financial Casualty contends that Ortizburgos "appeared in court after his release on bail on October 20, 2022, the court ordered [him] to '*continue reporting' to probation.*" (Italics added.) It claims that when Ortizburgos "was ordered to complete probationary terms, the bond was exonerated by operation of law," voiding the trial court's entry of summary judgment.

Financial Casualty has not met its burden of showing error. (*Meridian Financial Services, Inc. v. Phan, supra,* 67 Cal.App.5th at p. 684.) It has not cited any evidence in the record showing that the trial court ordered Ortizburgos to "'continue reporting' to probation" on October 20, 2022. Its failure to provide a citation for this contention waives the argument. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

While we need not go further, our own independent review of the record indicates that Ortizburgos was not returned to probation on October 20, 2022, or at any point after the bail bond was issued. The trial court's minutes state that his probation was revoked on October 3, 2022. Nothing in the court's minutes from October 20, 2022, or any subsequent date, indicate that probation was ever reinstated. Nor are there any transcripts from these hearings that we can review. Further, the court's minutes from March 7, 2023, state that "Probation was REVOKED on 10/03/2022." This further shows that Ortizburgos never had his probation reinstated after it was revoked on October 3, 2022.

# III.

## MATERIAL INCREASE IN RISK

*A. Applicable Law*

"A bail bond is in the nature of a contract between the government and the surety; the surety acts as a guarantor of the defendant's appearance under risk of forfeiture of the bond. [Citation.] The surety guarantees that the defendant will appear at the specific time and place and if the defendant fails to appear at the specified time and place, the surety is absolutely indebted to the state for the amount of the bond. [Citation.] The scope of a surety's contractual obligation under the . . . bond is defined by applicable statutory law and language of the bond itself." (*People v. Allen* (1994) 28 Cal.App.4th 575, 581.)

""""[I]f the government materially increases the risk to the surety beyond the express terms of the bond without notice to the surety or the surety's consent, the government violates its contract with the surety, and the surety is entitled to vacation of the forfeiture and exoneration of the bond."' [Citation.] 'When the recognizance of bail is accepted, an implied covenant on the part of the government exists that it will not "take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him."' [Citation.] 'Accordingly, a surety is discharged from its liability under the bail bond agreement if the government, without the surety's consent or knowledge, materially increases the surety's risks." (*People v. Financial Casualty & Surety, Inc.* (2019) 39 Cal.App.5th 1213, 1227.)

"[T]he surety has the burden of showing that the bail conditions materially increased its risks." (*People v. International Fidelity Ins. Co.* (2017) 11 Cal.App.5th 456, 461.) In assessing a surety's argument, "courts

10

must consider the bonding language and 'whether the government's actions materially increased the risk that the surety had accepted.'" (*Ibid*.)

*B. Merits*

Financial Casualty argues that the bail bond was exonerated because the County materially increased its risk by failing to notify it of (1) the second petition filed on February 22, 2023, and (2) the warrant issued on March 7, 2023.[5] Financial Casualty asserts that Ortizburgos' "alleged behavior was in violation of the conditions imposed for public safety on the bail bond. [His] breach of the conditions of the bond materially increased the risk that [he] would further breach the terms of his release by failing to appear in court. The report was not served on the bail agent, or [Financial Casualty]."

However, a surety's liability is only discharged if "'*the government's actions* materially increased the risk that the surety had accepted.'" (*People v. International Fidelity Ins. Co.*, *supra*, 11 Cal.App.5th at p. 461, italics added; *People v. Financial Casualty & Surety, Inc.*, *supra*, 39 Cal.App.5th at p. 1227.) Here, the County took no action that increased Financial Casualty's risk. It did not impose any new bail conditions on Ortizburgos or grant him any privileges. (See, e.g., *People v. International Fidelity Ins. Co.*, *supra*, 11 Cal.App.5th at p. 461 [court placed additional conditions upon the defendant's release]; *People v. Western Ins. Co.* (2013) 213

---

[5] Financial Casualty also contends that the County failed to notify it that the trial court revoked Ortizburgos' probation on March 7, 2023. But that is not when Ortizburgos' probation was revoked. It was revoked on October 3, 2022, well before Financial Casualty issued its bail bond. This is reflected in the court's minute order of October 3, 2022, and reiterated in the court's minutes from March 7, 2023, which state "Probation was REVOKED on 10/03/2022."

Cal.App.4th 316, 325 [court issued order permitting defendant to leave the country].) Nor has Financial Casual cited any authority showing the County was required to give notice of the second petition or the bench warrant.[6] Thus, it is unclear how the County engaged in any action that materially increased Financial Casualty's risk.

Further, even if the County's lack of notice can be construed as an action under the relevant doctrine, it did not materially increase Financial Casualty's risk. Financial Casualty asserts that "[w]hen a defendant breaches the public safety conditions imposed as conditions of bail the defendant is demonstrating a tendency to violate court orders that are the basis of the conditions that allowed the defendant's release into the community. A breach in bail conditions is per se a material increase in the risk that the defendant will disobey the order to appear in court."

However, prior to issuing the bail bond, Financial Casualty already knew of Ortizburgos' potential "tendency to violate court orders that are the basis of the conditions that allowed [his] release into the community." Financial Casualty issued the bail bond because Ortizburgos was in jail for allegedly violating his probation terms. He had been arrested on suspicion of (1) violating a protective order, (2) unlawful possession of a controlled substance, and (3) false representation of identity to a police officer. As such, prior to issuing the bail bond, Financial Casualty already knew that Ortizburgos might disobey a court order or a bail bond condition. The

---

[6] Financial Casualty cites *People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, but this case is inapposite. It discusses providing notice of forfeiture of a bail bond after a defendant fails to appear in court. (*Id*. at p. 906.) The County gave that notice.

County's alleged failure to provide Financial Casualty with notice of the second petition or the warrant did not hide any material risk from them.

Financial Casualty also appears to argue that a more relaxed standard under Civil Code section 2819 governs here. This statute applies to sureties and guarantors generally, and it exonerates them from liability if the creditor makes any change to the original obligation without the surety's consent. It does not require a material increase to the surety's risk.[7] We need not discuss this statute. Courts have already found that it does not apply to bail bonds. (*People v. Financial Casualty & Surety, Inc*, *supra*, 39 Cal.App.5th at pp. 1227–1228, fn. 14 ["Case law developed specifically in the bail bond context . . . requires that to exonerate a bond based on a change in bail conditions, the surety must establish that the change materially increased its risk under the bond"].)

---

[7] "A surety is exonerated, except so far as he or she may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended." (Civ. Code, § 2819.)

13

## DISPOSITION

The judgment is affirmed. The County is entitled to its costs on appeal.


MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


GOODING, J.

14